# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANDRES ABREU, on behalf of himself and all others similarly situated**   ) ) ) | |
| **Plaintiff,**   ) ) | **Civil Action No.** |
| **v.**   ) ) | **CLASS COMPLAINT** |
| **STATE STREET CORPORATION**   ) and   ) **HMG AMERICA, LLC**   ) and   ) **HCL TECHNOLOGIES, LTD,**   ) and   ) **STERLING INFOSYSTEMS, INC.**   ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.**   ) | |

## PRELIMINARY STATEMENT

On behalf of himself and all others similarly situated, Plaintiff Andres Abreu ("Plaintiff or "Mr. Abreu"), by and through his attorneys, the Law Office of Danielle Spang, and Francis & Mailman, P.C., respectfully alleges as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") brought on behalf of applicants for employment with State Street Corporation ("State Street"), HMG America, LLC ("HMG") and HCL Technologies, LTD ("HCL").

2.      Plaintiff contends that Defendant State Street systematically violates section 1681b(b)(2) of the FCRA by requiring job applicants to sign standardized background check application forms which include express and implied waivers, irrelevant state law disclosures, and other extraneous language that is not permitted by the FCRA's stand-alone disclosure form

requirement.  As a result, State Street fails to obtain proper authorization to procure background reports on employment applicants, but procures such reports anyway, invading applicants' privacy.

3.      Plaintiff further contends that Defendant HMG and Defendant Sterling Infosystems, Inc. ("Sterling") systematically violates section 1681b(b)(2) of the FCRA by obtaining and using consumer reports for employment purposes without obtaining any consent form whatsoever, likewise invading consumers' privacy by impermissibly accessing their consumer reports.

4.      Plaintiff further contends that Defendants State Street, HMG, HCL, and Sterling systemically violate section 1681b(b)(3) of the FCRA by using "consumer reports" to make an "adverse" decision relating to prospective employment without, beforehand, providing the person who is the subject of the report a copy of the report and a summary of rights under the FCRA. As a consequence of that violation, job applicants such as Plaintiff are denied the opportunity to view the reports sold about them, and to dispute any inaccuracies in the reports *before* the adverse action is taken.

5.      The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4) (emphasis added), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate.  15 U.S.C. § 1681(b).  In order to ensure that consumers are aware that reports are being generated about them, and to give consumers opportunities to review the reports and contest inaccuracies and illegalities in the report, Congress established a mandatory notification and disclosure regime.  Many of these notices and disclosures are specifically designed to govern job applicants and employees whose employers perform background screening on their employees.

Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users" of "consumer reports" such as Defendants. This action involves the systematic violation of those important rules.

6.      Plaintiff was denied employment as a desktop support engineer at State Street through HCL and HMG in September 2014 based upon a standardized background consumer report conducted by Sterling, pursuant to an agreement between Sterling and State Street whereby Sterling performs background screening on State Street's candidates for hire or promotion, including by obtaining and using consumer reports from other entities, including but not limited to Trans Union, LLC.

7.      In violation of the FCRA, Defendants State Street, HMG, and Sterling each either (a) failed entirely to obtain Plaintiff's written consent to conduct a background check,  or (b) required Plaintiff to sign a background check application form which did not consist "solely of the disclosure that a consumer report may be obtained for employment purposes," as required by 15 U.S.C. § 1681b(b)(2)(A)(i), but instead unlawfully attempted to obtain future protection for Defendants for any unlawful or discriminatory actions, and which provided other limitations of consumer and other extraneous eye-straining language.

8.      In further violation of the FCRA, Defendants State Street, HMG, HCL, and Sterling each failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide to Plaintiff a copy of the background report it obtained from Sterling, *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3).  Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself and a class of similarly situated employment applicants who were required to sign Defendants' background check application forms that violated FCRA section 1681b(b)(2).

9.      Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself individually for Defendants' failure to comply with FCRA section 1681b(b)(3)'s pre-adverse action notification requirements.

## PARTIES

10.      Plaintiff is an adult individual residing in Dorchester, Massachusetts.

11.      Defendant State Street Corporation ("State Street") is a financial services company licensed to the business in the State of Massachusetts, has substantial contacts in this District, and has a principal place of business at State Street Financial Center, One Lincoln Street, Boston, Massachusetts 02111.

12.      Defendant HMG America, LLC ("HMG"), is an IT consulting company licensed to do business in the State of Massachusetts, has substantial contacts in this District, and has a principal place of business at 33 Wood Avenue South, Suite 600, Iselin, New Jersey 08830.

13.      Defendant HCL Technologies, LTD ("HCL"), is an IT & software development outsourcing company licensed to business in the State of Massachusetts, has substantial contacts in this District, and has a principal place of business at 400 Crown Colony Drive, 2nd Floor, Suite 203, Quincy, Massachusetts 02169.

14.      Defendant Sterling Infosystems, Inc. ("Sterling") is a business entity that regularly conducts business in New York, and has a principal place of business located at 1 State Street Plaza, 24th Floor, New York, New York 10004.  According to its website, "Sterling Infosystems is the world's largest company focused entirely on background checks." http://www.sterlinginfosystems.com/about-sterling.htm.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that all claims brought arise under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*.

16.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) because Plaintiff and multiple Defendants "reside" in this District as defined in 28 U.S.C. § 1391(c).

**STATEMENT OF FACTS**

**Background:  Defendants' Use of Sterling's Background Screening Reports**

17.     Sterling is among the largest of the nation's employment background screening companies, *i.e.,* those that provide "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers and employers.

18.     Sterling investigates and reviews public records and private databases and assembles and/or maintains consumer files which contain information concerning, among other things, the alleged criminal, credit and employment history of individuals.

19.     From its files, Sterling sells background consumer reports to potential employers (such as Defendants State Street, HMG, and HCL) wishing to screen applicants for employment. According to its website, Sterling "is the world's largest company focused entirely on background checks."   http://www.sterlingbackcheck.com/About /Company-Profile.aspx.

20.     In addition to providing background reports, Sterling provides to its employment screening customers an additional service what us called alternatively "scoring" or "adjudication." Under this service Sterling will "score" an applicant eligible or ineligible for employment based on an adjudication "matrix" that the customer develops with Sterling.  The background report itself indicates the scoring with key terms such as "clear" when the employment candidate meets that

employer's hiring criteria or "disqualified" and/or "needs review" when a disqualifying record is associated with the employment candidate on the background report.   This service is attractive to Sterling's customers who are constantly hiring and promoting in very large volumes because it provides the customer with a remote, outsourced tool to make its employment decisions rapidly.

21.     State Street, HMG, and/or HCL use Sterling's screening services to conduct background checks on applicants for employment. The background reports resulting from these services are delivered directly to State Street.  Upon information and belief, State Street, HMG, and/or HCL use Sterling's scoring services.

22.     Sterling is also a "user" of consumer reports, in that it obtains consumer reports from other consumer reporting agencies, such as Trans Union, LLC, and incorporates them into its background checks which it uses to adjudicate candidates for employment.  *See Goode v. LexisNexis Risk Solutions, Inc.*, 848 F. Supp. 2d 532, 542-43 (E.D. Pa. 2012) (consumer reporting agency can be liable as user of consumer reports).

23.     Under the FCRA, a "user" of a consumer report, such as Sterling, State Street, HMG, and HCL may not lawfully obtain any background consumer report on any prospective job applicant, or "consumer" as used in the FCRA, unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure***, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis supplied).

24.     The purpose of the stand-alone disclosure is to inform the consumer job applicant that a background report will be procured about him or her, not to provide the employer an opportunity to obtain the prospective employee's signature on a form filled with confusing language and self-serving protections for the employer or waivers of the employee's rights.

25.     Each Defendant knew or should have known that its failure to provide a stand-alone disclosure was a violation of the FCRA because the statutory language of section 1681b(b)(2)(A) was pellucidly clear that no one may procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely***[1] ***of the disclosure***, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis supplied).

26.     In addition, interpretations of the FCRA by the Federal Trade Commission ("FTC") from 1998, sixteen years prior to Defendant State Street required that Mr. Abreu sign their respective forms, show that extraneous language in a background authorization or disclosure form violates the FCRA.   In response to company inquiries, the FTC issued two opinion letters addressing section 1681b(b)(2)'s "consists solely" language.  The first letter explicitly states that "inclusion of ... a waiver [of one's FCRA rights] in a disclosure form will violate" section 1681b(b)(2) because the form will not "consist 'solely' of the disclosure."  Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998). The second letter stated that the FCRA prohibits disclosure forms "encumbered by any other information ... [in order] to prevent consumers from being distracted

---

[1]     According to the Merriam-Webster online dictionary, the word "solely" is defined as "without anything or anyone else involved;" and "to the exclusion of all else."  *See* http://www.merriam-webster.com/dictionary/solely.   According to dictionary.com, "solely" means "exclusively or only."  *See* http://dictionary.reference.com/browse/solely. These dictionary definitions of the word "solely" leave no doubt that a document disclosing that an employer planned to obtain a consumer report does not "consist[] solely of the disclosure" when the document also contains a release of liability.

by other information side-by-side with the disclosure."  Letter from Clarke W. Brinckerhoff, Fed. Trade Comm' n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998).

27.     Numerous courts interpreting the FCRA have found FTC opinion letters persuasive.  *See, e.g., Owner–Operator Independent Drivers Ass'n, Inc. v. USIS Commercial,* 537 F.3d 1184, 1192 (10th Cir. 2008); *Morris v. Equifax Info. Servs., LLC,* 457 F.3d 460, 468 (5th Cir. 2006).  *See also*, *Gager v. Dell Financial Services, LLC,* 727 F.3d 265, 271-72 n.5 (3d Cir. 2013) (affording some deference to Federal Communication Commission analysis and finding it persuasive in interpreting Telephone Consumer Protection Act).

28.     Further, a "user" of a consumer report, such as State Street, HMG, HCL, and Sterling who intends to take any "adverse action" against a job applicant "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer job applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action.  15 U.S.C. § 1681b(b)(3)(A).

29.     State Street, HMG, HCL, and Sterling each systematically fail to send any notice, copy of a consumer report, or a notice of consumers' FCRA rights before taking adverse employment action on the basis of consumer reports.

30.     There is longstanding regulatory guidance for employers making clear their obligations and the protections afforded to job applicants under the FCRA.  The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken.  Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically

disqualify the individual from employment or lead to an adverse employment action.  Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete."  See Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

31.    A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that may be inaccurate, or discuss the report with the prospective employer before adverse action is taken.  *See* Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.").

32.    Numerous courts interpreting the FCRA have found FTC opinion letters persuasive.  *See, e.g., Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial*, 537 F.3d 1184, 1192 (10th Cir. 2008); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 468 (5th Cir. 2006).  *See also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271-72 n.5 (3d Cir. 2013) (affording some deference to Federal Communication Commission analysis and finding it persuasive in interpreting Telephone Consumer Protection Act).

33.    Consistent with that purpose, federal courts have held that the prospective employer must provide the report to the consumer "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report."  *Williams v. Telespectrum, Inc.*, 2006 WL 7067107, at *5 (E.D. Va. Nov. 7, 2006); *Beverly v. Wal-Mart Stores, Inc.*, 2008 WL 149032 (E.D. Va. Jan. 11, 2008) (quoting *Williams*).  In *Reardon v. Closetmaid Corp.*, 2011 WL 1628041  (W.D. Pa. April 27, 2011), the court certified a class action for prospective employees

who did not receive a copy of their consumer report at least five days before being notified that the employer might take adverse action.

34.     The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the consumer job applicant that he or she is about to experience an adverse action, such as a rejection, based on a report's contents, and to provide him or her an opportunity to challenge the accuracy, completeness or relevancy of the information with the consumer reporting agency or the user *before* that job prospect or job is lost.

**The Facts Pertaining to Class Representative Plaintiff Andres Abreu**

35.     Plaintiff Andres Abreu applied for employment with State Street through HMG and HCL as a desktop support engineer in early September 2014, and was interviewed via a video conference call.

36.     In connection with the onboarding process, Defendant State Street required Mr. Abreu to sign a separate "Consent to Request Consumer Report & Investigative Consumer Report Information" form that is not the stand-alone disclosure required by FCRA section 1681b(b)(2). The background check application form appears to be one provided by Sterling to some of its customers.

37.     A virtually identical Sterling document was found to form the basis for a willful violation of FCRA section 1681b(b)(2) in a recent decision in the Southern District of New York:

> Notwithstanding Defendants' arguments to the contrary, the Sterling Disclosure [used by the employer] does not appear to be a standalone disclosure. In addition to the disclosure and an authorization, which is permitted, the Sterling Disclosure includes, inter alia: information regarding time frames within which the applicant must challenge the accuracy of any report; an acknowledgement that "all employment decisions are based on legitimate non-discriminatory reasons"; the name, address and telephone of "the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report" (interestingly, the form lists three separate units, not all of which could be the "nearest"); and all sorts of state-specific disclosures that had nothing to do with

Plaintiff's potential employment in New York. All of those extraneous additions to the form stretched what should be a simple disclosure form to two full pages of eye-straining tiny typeface writing.

*Jones v. Halstead Management Co.*, ___ F. Supp. 3d ___, 2015 WL 366244, *5 (S.D.N.Y. Jan. 27, 2015).

38.     The background check application form that Defendant State Street required Mr. Abreu to sign was not the "clear and conspicuous disclosure … in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes" as required by section 1681b(b)(2)(A)(i) of the FCRA.

39.     Neither HMG nor Sterling obtained Mr. Abreu's consent to obtain a consumer report for employment purposes using any written document at all.

40.     On or about September 5, 2014, "State Street via Sterling Infosystems" obtained a consumer report about Plaintiff from Trans Union, LLC for employment purposes.

41.     On or about September 5, 2014, Sterling used Plaintiff's Trans Union report to generated its own report, which scored Plaintiff as "DISQUALIFIED" for employment.

42.     On September 9, 2014, Plaintiff was sent an offer letter by HMG for the desktop support engineer position, which Mr. Abreu accepted in writing the following day, on September 10, 2014.

43.     Upon information and belief, on or after September 9, 2014, Sterling delivered the report it prepared about Plaintiff to State Street, HMG, and HCL, which each adopted Sterling's determination of "DISQUALIFIED" and removed Mr. Abreu from hiring consideration based upon the report.

44.     At no point did State Street, HCL, HMG, or Sterling provide Mr. Abreu with a pre-adverse action notice or a copy of his Sterling or Trans Union reports or a statement of FCRA rights as required by FCRA section 1681b(b)(3).

45.     Shortly after September 9, 2014, a representative of HMG contacted Mr. Abreu via telephone and informed him that the job offer with State Street was rescinded because of "credit information."  Mr. Abreu did not have a copy of the Sterling or Trans Union reports that were the source(s) of this information, or an opportunity to dispute this determination.

46.     As a direct result of Defendants unlawfully obtaining and using the Sterling and Trans Union background reports, Mr. Abreu lost the job opportunity at State Street and suffered actual damages, including wage and other pecuniary loss, humiliation, embarrassment and emotional distress.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

(a) State Street section 1681b(b)(2) Class: All natural persons residing within the United States and its Territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, State Street procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar in form to the Disclosure Form provided to Mr. Abreu and described above.

(b) HMG section 1681b(b)(2) Class: All natural persons residing within the United States and its Territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, HMG procured or caused to be procured a consumer report for employment purposes without obtaining the consumer's written consent on a disclosure and authorization form.

(c) Sterling section 1681b(b)(2) Class: All natural persons residing within the United States and its Territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action,

Sterling procured or caused to be procured a consumer report for employment purposes without obtaining the consumer's consent on a written disclosure and authorization form.

(d) <u>Section1681b(b)(3) Class</u>: All natural persons residing within the United States and its Territories about whom State Street, HMG, or HCL obtained a consumer report for employment purposes beginning five years prior to the filing of this action and extending through the resolution of this action, and for whom Sterling failed to provide that person with a copy of his/her consumer report or a copy of the FCRA summary of rights at least five business days prior to taking adverse action against that person based upon information in the consumer report.

(e) <u>Adjudication 1681b(b)(3) Class</u>:  All natural persons residing within the United States and its Territories who were the subject of a Sterling background report for employment purposes that scored them "DISQUALIFIED," beginning five years prior to the filing of this action and extending through the resolution of this action, and for whom any Defendant failed to provide that person with a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before that determination.

48.     Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

49.     **Numerosity**.  **FED. R. CIV. P. 23(a)(1)**.  The Class members are so numerous that joinder of all is impractical.  Upon information and belief, Defendants obtain signed standardized background check application forms for background reports and procure and use hundreds if not thousands of consumer reports on applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by Defendants.

50.     **Existence and Predominance of Common Questions of Law and Fact**.  **FED. R. CIV. P. 23(a)(2)**.  Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members.  The common legal and factual questions include, among others:   Whether Defendants willfully or negligently violated section1681b(b)(2) of the FCRA by procuring or causing to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that

consists solely of the disclosure that a consumer report may be obtained for employment purposes, and/or section 1681b(b)(3) of the FCRA by taking adverse employment action based upon a consumer report without providing the consumer who is the subject of the report with notice, a copy of the report, and a statement of FCRA rights at least five business days before taking the adverse action.

51.     **Typicality**.  FED. R. CIV. P. 23(a)(3).  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for statutory, actual and punitive damages that he seeks for absent class members.

52.     **Adequacy**.  FED. R. CIV. P. 23(a)(4).  Plaintiff is an adequate representative of the Classes.  His interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent.  He has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

53.     **Predominance and Superiority**.  FED. R. CIV. P. 23(b)(3).  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory, actual and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court

system presented by the complex legal and factual issues raised by Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT I
### Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)
### (Plaintiff and Classes v. State Street, HMG, and Sterling)

54.     Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

55.     Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

56.     Defendants State Street, HMG, and Sterling are each "persons" as defined by the FCRA, 15 U.S.C. § 1681a(b).

57.     The Sterling background reports ordered by Defendants State Street and HMG are "consumer reports" used for "employment purposes" within the meaning of 15 U.S.C. §§ 1681a(d) and 1681a(h).

58.     Defendants are liable for willfully and negligently violating section 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

**COUNT II**
**Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)**
**(Plaintif and Classes v. State Street, HMG, HCL, and Sterling)**

59.     Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

60.     The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report *and* a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, *before* taking such adverse action.  15 U.S.C. § 1681b(b)(3)(A).

61.     For purposes of this requirement, an "adverse action" includes "any . . . decision  . . . that adversely affects any current or prospective employee."  15 U.S.C. § 1681a(k)(1)(B)(ii).

62.     The FCRA requires Defendants State Street, HMG, HCL, and Sterling, as users of consumer reports for employment purposes, to provide notice and certain documents to the applicant before taking adverse action based in whole or in part on the report.  Those mandatory disclosures include a copy of the consumer's report and a written description of the consumer's rights under the FCRA.  15 U.S.C. §§ 1681b(b)(3)(A)(i), (ii).

63.     Defendants State Street, HMG, HCL, and Sterling willfully and negligently violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff the following before taking adverse action during September 2014 based in whole or in part upon the report: (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and, (c) a written description of his rights under the FCRA.  Defendants thereby denied Mr. Abreu sufficient time to be able to review and dispute the report before Defendants took adverse action on his employment application.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

A.      An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.      An award of statutory, actual and punitive damages for Plaintiff and the Class;

C.      An award of pre-judgment and post-judgment interest as provided by law;

D.      An award of attorneys' fees and costs; and,

E.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

Respectfully Submitted,

/s/  *Danielle M. Spang*
Danielle M. Spang (BBO #684365)
**LAW OFFICE OF DANIELLE SPANG**
P.O. Box 183
Somerville, MA 02143
Tel. (617) 612-5291
Fax (855) 220-3375
dspang@spanglawoffice.com

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS (*pro hac vice forthcoming*)
JOHN SOUMILAS (*pro hac vice forthcoming*)
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: jsoumilas@consumerlawfirm.com

Dated: September 2, 2016